# Richmond.

## Terry v. Clark.

December 8th, 1887.

Absent, Richardson, J.

Contracts—*Novation—Satisfaction—Case at bar.*—K., an insolvent, held C.'s bond and assigned it to his mother, F., a creditor of K., agreed that if C. would assume K.'s debt to him, and pay the interest annually to F.'s sister during her life, the principal should be deemed satisfied. C. procured the mother to assign the bond to F.; which bond was replaced by another payable to the sister, and surrendered to C. C. paid the annual interest to the sister during her life. Afterwards, T. got a judgment against F., and brought his suit in chancery to enforce the lien of his execution on the alleged indebtedness of C. to F.:

Held:

The transaction between F. and C. being *bona fide* for a valuable consideration and between parties *suri juris,* was valid, and satisfied the obligation of C.

Appeal from decree of circuit court of Pittsylvania county, rendered August 6th, 1884, in the chancery cause wherein the appellant, Harvey Terry, was complainant, and the appellee, A. J. Clark, was defendant. The decree being adverse to the complainant, he obtained an appeal to this court. Opinion states the case.

*J. Gilmer* and *Carrington & Fitzhugh,* for the appellant.

*E. E. Bouldin* and *W. W. Gordon,* for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.

The facts disclosed by the record are as follows: William Fontaine, a citizen of Virginia, and resident in the county of Pittsylvania, was the owner of a tract of land lying in said county, conveyed to him, in fee, by a deed from Morris Pollock, dated December 1st, 1859, but not put to record until 17th February, 1868, because of a deficiency in the number of acres in the tract, sold and specified in the deed which had been the subject of adjustment. Fontaine sold this tract of land to one Elisha Keen, Jr., who paid part of the purchase money, and executed his obligation to Fontaine for $3,636, the residue. Fontaine, by deed of November 30th, 1866, conveyed this tract of land to said Elisha Keen, Jr., in fee, without any reservation of vendor's lien for the said deferred purchase money, or any lien on the said tract therefor. In July, 1867, said Elisha Keen, Jr., sold to the appellee, A. J. Clark, the said tract of land, with the crops thereon, for $8,000— of which Clark paid Keen $1,000, and gave his promissory notes to Keen—one for $4,000 payable to Keen May 1st, 1868, and one for $3,000, payable to Keen May 1st, 1869. Keen conveyed the said land to Clark by his fee simple deed of — July, 1867, without any reservation of vendor's lien, and without any lien on the land. Elisha Keen, Jr., subsequently, December 24th, 1867, assigned and delivered these two bonds of Clark—one for $4,000, and one for $3,000—to his mother, Mrs. Anna M. Keen, on a debt due from him, Keen, to her. Keen, at that time, contemplated bankruptcy, and soon after was adjudged and discharged as bankrupt. Fontaine having received no part of the $3,636 of purchase money, for which he held Elisha Keen's obligation of November, 1866, on the sale of the land to Keen as aforesaid, applied to A. J. Clark, his neighbor and friend, (who was the debtor of Mrs. Keen, assignee of Elisha Keen, Jr., and who, as he had reason to believe, could therefore do more to aid him than any one

else) to aid him, Fontaine, in securing this large, hopeless, and worthless debt of Elisha Keen's, or, at least, to secure the annual interest thereon, for the use of himself and his sister, Mrs. T. M. Thompson, whom he supported, proposing to Clark that if he would or could effect this, and would assume Keen's debt to him, Fontaine, he would give to him, Clark, the principal of the debt, or pledge himself to Clark that he should never be required to pay the principal provided he paid the interest on it, annually, during the life of Mrs. Thompson. Clark accepted this proposal, undertook the case on this contingency and stipulation, and did succeed in getting Mrs. A. M. Keen to assign to Fontaine, without recourse, on the 2nd day of May, 1868, the note of Clark for $3,000 to Elisha Keen, Jr., which she held by assignment from Elisha Keen, Jr., to her. Clark afterwards, October, 1869, gave his own note to Fontaine for $4,000, to take up this note and some indebtedness which he owed to Fontaine; and Fontaine surrendered to Clark his (Clark's) note for $3,000, payable to Elisha Keen, Jr., which Elisha Keen, Jr., had assigned to his mother, Mrs. E. M. Keen, and which she had assigned to Fontaine, by the procurement of Clark.

Fontaine afterwards asked Clark to substitute for that $4,000 note, which he had given to him, one for the same amount, and in all respects the same as that of October, 1869, except to make it payable to Tabitha M. Thompson, Fontaine's sister. Clark, after some demur, did so, on being assured by Fontaine that the terms of their agreement should not be changed, or in anywise affected by the change of the obligee. Clark paid the interest on $4,000 ($240) yearly, from 1868, to Fontaine (never to Mrs. Thompson) until Mrs. Thompson's death, in 1880; after which event Fontaine declined to receive any further payments of interest from Clark, though offered to him, stating that Clark had performed all his part of the aforesaid contract made between them in 1868, and was now entitled to absolute discharge from all liability for either

principal or interest; and, though the $4,000 note was not surrendered, Fontaine executed the deed of the 23d of November, 1880, setting out the agreement, acknowledging its full and final performance by Clark, and indemnifying him, Clark, against any demand on him for the said $4,000. Fontaine died in 1881.

In Fontaine's lifetime, in a suit instituted in the circuit court of the United States for the western district of Virginia, and therein pending in the style of The Bank of Pittsylvania, which sues for the use of Harvey Terry, v. William Fontaine, a judgment was rendered for the plaintiff on the 26th of March, 1876, against said Fontaine for $3,496, with interest thereon from March 9th, 1865 till paid, and $32 85 costs. Said judgment was docketed in the clerk's office of the said circuit court of the United States at Lynchburg on the 29th of May, 1876. A *fi. fa.* issued from the clerk's office of the said United States circuit court on the said judgment July 27th, 1876, returnable to September rules, 1876, which went into the hands of the United States marshal to be levied, and was returned "no effects."

The appellant here, Harvey Terry, on October 1, 1883, filed his original bill in this cause, setting up the said judgment, of which he filed, not the record, but only a short extract, and claiming that, by virtue of the said execution of *fi. fa.* issued from the United States circuit court, and coming into the hands of a United States marshal, he, Terry, had acquired a lien, from the time said *fi. fa.* was delivered to the marshal, on all the personalty which Fontaine, the execution debtor, possessed, or was entitled to, and charging that Clark, the appellee here, was at that time indebted to Fontaine in the sum of $4,000 00, evidenced by Clark's obligation to Fontaine—the one heretofore named and described. The bill calls upon Clark to answer upon oath and to make discovery. Clark, by leave of the court, did, on the 26th of January, 1884, file his general demurrer to the bill, pleaded *nultiel* record, and an-

swered the bill. The administrator of William Fontaine had been made a party defendant, and, as required, answered the bill.

Depositions for both complainant and defendants were taken and filed, and the schedule of E. Keen, Jr., and the deed of 23d November, 1880, and the extract from the record in the suit in the United States court, were filed, and on the 6th day of August, 1884, the circuit court rendered its decree—deciding that the agreement and contract between Fontaine and Clark, in 1868, was a valid and *bona fide* contract, for a valuable consideration, and one proper to be sustained by the court; that Clark had fully discharged his obligations under that contract, and was under that contract bound to pay only the interest, and had paid it, and was fully and finally discharged of the principal; and that the aforesaid contract and agreement was valid and good against the complainant, Terry; and deeming it unnecessary to pass on any. other of the questions raised, dismissed the bill: whereupon Terry obtained this appeal.

The record presents various questions which would be of interest, if it were needful to discuss or decide them in this case; but the only question before this court is, whether the circuit court erred in sustaining the verbal agreement between Fontaine and Clark, and, in holding that Clark was wholly discharged from the obligation which he had given to Fontaine, and for which he had, at the request of Fontaine, and upon his guarantee that he should never be required to pay more than the interest as long as Mrs. Thompson lived, substituted his note payable to Mrs. T. M. Thompson, Fontaine's sister. Clark would not have owed Fontaine, even if he owed the $4,000, principal, to Mrs. Thompson; and the appellant's recourse, if any, would be to Mrs. Thompson's estate. The contract between Clark and Fontaine, made and in execution before the judgment of Terry was obtained, is clearly proved by the answer and deposition of Clark, uncontradicted by any particle of testimony. It was a fair and open transaction—

untainted by fraud, or any circumstance of doubt or impropriety—between parties who were fully *suri juris*, and was for a valuable consideration. Fontaine was largely benefitted by it; had proposed it himself, and was always contented with its terms, and was fully satisfied as to its performance by Clark, of whom he refused to receive even the interest after the death his sister, Mrs. Thompson. Before the agreement with Clark, Fontaine had no particle or vestige of property in the subject-matter. He held the note of Elisha Keen, a discharged bankrupt, for an utterly hopeless and worthless debt, and any valuable interest which he did acquire through the contract with Clark, was subject to its terms. Fontaine secured by the contract with Clark, an annuity of $240 for twelve years; which Clark would have been bound to pay, as long as Mrs. Thompson might live, and the transaction was as fair and valid as any life policy contract of a life annuity association—even if Clark had notice of any debt against Fontaine, which he had not—certainly not of this judgment of Terry against Fontaine, which was obtained eight years after this arrangement was effected between Clark and Fontaine.

We are of opinion that there is no error in the decree of the circuit court of Pittsylvania, complained of, which is hereby affirmed.

DECREE AFFIRMED.